UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

| Case No. | CV 12-10493 DSF (VBKx) | Date | 5/6/13 |
|---|---|---|---|
| Title | Bank of America, etc. v. Janet Fuladian, et al. | | |

| Present: The Honorable | DALE S. FISCHER, United States District Judge |
|---|---|

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**   (In Chambers) Order GRANTING Motion to Dismiss and Motion to Expunge Lis Pendens (Dkt. Nos. 21, 22)[1]

       The following facts are drawn from the complaint and are taken as true for the purpose of these motions.[2]  In 2005, Defendant Janet Fuladian purchased an interest in the Ocean Towers Housing Cooperative and acquired a leasehold in a unit in that cooperative.  The loan at issue in this case was a refinance loan originated by Metrocities Mortgage, LLC in 2006 for $1,540,000 and secured by the cooperative stock and the leasehold in the unit.  Currently, and at times relevant to this suit, the note is and was held by the Thornburg Mortgage Securities Trust 2007-3 ("Thornburg"), with Bank of America ("BofA") as trustee.  The series of servicing arrangements on the note is somewhat complicated, (see Compl. ¶¶ 11-13), but the effective servicer of the note in the relevant period was Cenlar, FSB ("Cenlar").  Cenlar does not appear to have been the original servicer of the loan.  (See Compl. ¶ 12.)  At some point prior to August 10, 2010, Fuladian went into default on the note.  On August 10, 2010, the trustee on the deed of

---

[1] The Court deems this matter appropriate for decision without oral argument.  See Fed. R. Civ. P. 78; Local Rule 7-15.  The hearing set for May 13, 2013 is removed from the Court's calendar.

[2] The complaint purports to be verified, but many of the facts alleged cannot possibly be within the knowledge of the verifier, an official at Cenlar, FSB, the current servicer of the note at issue.
       The Court did not consider the declaration of John Paul Hanna submitted by Defendant.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

trust, Quality Loan Service Corporation ("Quality"), filed a notice of default and election to sell under deed of trust. There is no allegation that Ocean Towers was made aware of the notice of default at that time. At some point prior to April 18, 2011, Fuladian defaulted on her lease payments on the unit at Ocean Towers. Ocean Towers attempted to contact the original lender, Metrocities, to notify it of the default and Ocean Towers's intention to file an unlawful detainer action. Metrocities – by then known as Prospect Mortgage – informed Ocean Towers that the note was now owned by Thornburg, with Cenlar as servicer. Prospect attempted to notify Cenlar and Thornburg of the receipt of the Ocean Towers letter, but that attempt was ineffective due to incorrect addresses.[3] On May 11, Ocean Towers attempted to send notice of the lease default to a former servicer of the note, Select Portfolio Servicing, Inc., and the trustee on the deed of trust, Quality. On August 2, 2011, Ocean Towers obtained a default judgment in an unlawful detainer action against Fuladian, taking right to possession of the cooperative unit. Later that month, the unit was leased by Ocean Towers to Defendant Windsor Property Trust ("Windsor"), with Eric Rotelli as trustee. The lease to Windsor was accompanied by a purchase of stock in the cooperative by Windsor under a stock purchase agreement.

BofA, as trustee for Thornburg, now seeks to quiet title to the cooperative unit.[4] It also raises related claims for declaratory relief and equitable subordination against Windsor. Windsor has moved to dismiss the complaint against it and to expunge the lis pendens placed by BofA on the unit. Several other claims against Fuladian are not the subject of this motion.

Termination of a leasehold in real property results in forfeiture of any security interest held in that leasehold. Glendale Fed. Bank v. Hadden, 73 Cal. App. 4th 1150, 1155 (1999). BofA does not argue that Glendale was wrongly decided, and the Court sees no reason to question its analysis.[5] BofA unpersuasively tries to limit the application

---

[3] The letter from Prospect references "MERS information" that the writer purports to attach, but is not part of the exhibit to the complaint. (See Compl., Ex. 6.) It is not clear if the addresses used by Prospect were from MERS or some other source.

[4] As with much of this case, it is difficult to understand exactly what BofA is trying to do through the quiet title claim. Is it seeking a ruling that its lien on possession of the unit is still valid? Does it seek to divest Windsor of any right to possession of the unit? The precise contours of the claim do not matter, however, because BofA has no valid claim on the unit.

[5] "[W]here there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

of <u>Glendale</u> to situations where the lease expires "on its own terms" – presumably excluding termination by unlawful detainer action. But this makes no sense because in <u>Glendale</u> itself the lease terminated due to an unlawful detainer action and the court found that the lien was extinguished. BofA also argues that California Civil Code § 3275 should relieve them from forfeiture in this case. But, again, <u>Glendale</u> considered application of § 3275 to this very situation and rejected it. 73 Cal. App. 4th at 1157-58 ("The burden is on the lender to assure itself that the lease would not be terminated and that the rights of the tenant/debtor would not be dissipated without its consent.").

BofA further tries to distinguish <u>Glendale</u> by complaining that it was not given notice of Fuladian's default on the lease or the filing of the unlawful detainer action. But there was no requirement – statutory or contractual – that Ocean Towers give such notice. A holder of a security interest in a lease is not required to be joined in an unlawful detainer action. Cal. Civ. Proc. Code § 1164; <u>see also</u> <u>Glendale</u>, 73 Cal. App. 4th at 1153-54. BofA repeatedly cites section 4.06(b) of the lease as authority for a responsibility to notify the holder of a security interest of a default on the lease. It is not clear that a provision in the lease between Fuladian and Ocean Towers would ever allow a collateral attack on the unlawful detainer action that would prejudice Windsor's rights to possession of the unit, as opposed to allowing BofA to seek damages against Ocean Towers. But even if it could, section 4.06(b) clearly does not apply to this situation.

> In the event of Tenant's or other person's default <u>under its loan from a Lender</u>, the Lender shall have the right, without the prior consent or approval of Landlord, to sell the pledged shares at a public or private sale following at least thirty days prior written notice to Tenant and to Landlord, and to assign this Lease to the purchaser who shall agree as a condition of such assignment to cure any defaults hereunder.

(Def. Ex. 3 (Lease), § 4.06(b) (emphasis added).)

This section says nothing about any duties in the event of a default to Ocean Towers under the lease. On its face, it doesn't even concern lease defaults. It governs a lender's right to foreclose on its collateral, not Ocean Towers's right to regain possession of an apartment unit in the event of default on the lease. Under § 4.06(a), BofA would have had a right to foreclose on Fuladian and sell the leasehold and shares without approval of Ocean Towers, but it failed to do so prior to the extinguishment of the

---

appellate courts." <u>Lewis v. Tel. Emps. Credit Union</u>, 87 F.3d 1537, 1545 (9th Cir. 1996) (internal quotation marks omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

leasehold.[6] The effect of the end of the leasehold on a lender's collateral interest in that leasehold is governed by Glendale. As there was no requirement that Thornburg or BofA be given notice prior to the unlawful detainer action, the Court is not to create it by fiat. See Glendale, 73 Cal. App. 4th at 1156 ("Bank wants us to create a remedy to replace rights it lost because of its failure to protect its interest by way of customary contractual agreements. . . . The law does not permit us to do so.").

BofA grasps at section 11 of the Windsor Stock Cooperative Unit Purchase Agreement, (Compl., Ex. 10), which states that the Windsor "understands that the Property may be subject to redemption by the prior owner or lender." But this obviously does not independently establish any claim for redemption by any prior lender; it only sets out that the purchaser bears the risk of any such claim, if one existed. Contemplation of the possibility of a lender's claim does not mean that a valid one exists.

The Court cannot even follow BofA's nonsensical equitable subrogation argument. Whether or not Thornburg (or its predecessor in interest) paid off someone's debt at some point,[7] it is clear from the complaint that it didn't pay off any debt owed by Windsor. So the Court has no idea how equitable subrogation could have any relevance to this action against Windsor.[8]

---

[6] Notably, BofA's foreclosure trustee sent Fuladian a notice of default on the loan on August 10, 2010, and Ocean Towers did not obtain judgment in the unlawful detainer action until August 2, 2011. There is some vague implication in BofA's argument that the filing of the notice of default somehow should have prevented its security interest from being extinguished, but this argument is not actually made, let alone supported by any authority. In any event, it is highly unlikely that this would be so because it would greatly prejudice Ocean Towers's right to protect its interests in the event of a lease default. As is clearly seen from the facts in this case, the lender could simply sit on a default indefinitely without actually foreclosing. Ocean Towers cannot be prevented from evicting the defaulting tenant until the lender decides to get around to foreclosing.

[7] Both the complaint and the opposition to the motion to dismiss suggest that this claim is based on Metrocities paying off Fuladian's original mortgage debt at the time of the refinance. But there's no real question that Fuladian directly owes Thornburg for those funds through the note. It is unclear how equitable subrogation enters the picture.

[8] Although BofA doesn't plead or argue it, perhaps the idea is that Windsor should have been obligated to pay Fuladian's debt and so by extinguishing Fuladian's debt, Thornburg has effectively paid a debt owed by Windsor. This is fallacious for at least two reasons. First, Fuladian presumably still owes Thornburg money –the security interest may be gone, but the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

The motion to dismiss is GRANTED.  There is no reason to grant leave to amend as the relevant legal documents are all before the Court and there is no legal merit to BofA's claims.  Therefore, amendment would be futile.

The motion to expunge lis pendens is GRANTED as there is no probable validity to any of the claims.  Defendant's request for fees and costs is GRANTED as there was no substantial justification for opposing the motion.  While the headings may suggest that the motion to expunge was based solely on the lack of a real property claim, the substance of the motion clearly implicates the probable validity of the claims.  BofA had no non-frivolous argument for differentiating Glendale from this case.  It also made no argument that Glendale was wrongly decided.  Its argument with regard to section 4.06(b) of the lease requires a willful misreading of the plainly written meaning of that provision.  The argument pursuant to California Civil Code § 3275 explicitly foreclosed in the same factual situation by Glendale.  The equitable subrogation claim is either completely frivolous or betrays an inability of counsel to convey whatever it was they were trying to claim.  The argument with regard to the Windsor stock purchase agreement is also frivolous on its face.  There was no probable validity to the claims raised in the complaint against Windsor.

Defendant requested $12,425.00 in fees and costs.  This amount is generally reasonable and is not opposed by BofA.  However, the total includes five hours for fees related to a hearing on this matter.  As there was no hearing, $2,250.00 will be deducted from the total.  Defendant also claims $500 in costs with no support.  Those claimed costs will also be deducted without prejudice against seeking costs pursuant to 28 U.S.C. § 1920 on entry of judgment.  In summary, the Court awards fees in the amount of $10,175.00 in favor of Defendant Eric Rotelli, as trustee for Windsor, and against BofA.

IT IS SO ORDERED.

---

debt presumably remains.  Second, this argument assumes Windsor's responsibility for the debt of Fuladian, but BofA never establishes such a responsibility and it is difficult to see how such a responsibility could have arisen.