UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| U.S. BANK N.A. as Successor Trustee for Bank of America as Trustee for Thornburg Mortgage Securities Trust 2007-3,<br><br>            Plaintiff,<br><br>    vs.<br><br>JANET FULADIAN and ERIC ROTELLI, as Trustee of Windsor Property Trust, a California trust,<br><br>            Defendants. | Case No.: CV 12-10493-DSF (Ex)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

The parties stipulated to a trial before the Court based on briefing and stipulated factual findings. The trial occurred on February 9, 2016. The Court now adopts the stipulated facts and makes legal conclusions.

**FINDINGS OF FACT AS STIPULATED BY THE PARTIES**

    1.    On or about December 6, 2006, Defendant Janet Fuladian executed a Payment Option/Adjustable Rate Note ("Note") to obtain a refinance loan in the amount of One Million Five Hundred Forty Thousand Dollars ($1,540,000)

1

("Subject Loan") from the lender, Metrocities Mortgage, LLC, predecessor to Plaintiff.

2. The Subject Loan proceeds were disbursed as follows: (i) approximately Nine Hundred Seventy-Seven Thousand Seventy-Four Dollars and Fifty Five Cents ($977,074.55) was paid to NCB, FSB to pay off the pre-existing first loan; (ii) approximately Five Hundred Thirty-Six Thousand Six Hundred Fifty-Seven Dollars and Ten Cents ($536,657.10) was cash paid directly to Defendant.

3. The Subject Loan was subject to and secured by Defendant's leasehold interest in the real property located at 201 Ocean Avenue, Apartment 1509-P, Santa Monica, California 90402 (the "Property"), as evidenced by the Short Form Deed of Trust and Assignment of Rents recorded against the Property, the Loan Security Agreement, and the Recognition Agreement.

4. The Note was subsequently negotiated, by way of endorsement in blank, to Plaintiff U.S. Bank N.A. as the Successor Trustee of the Thornburg Mortgage Securities Trust 2007-3, which is the current holder of the Note.

5. Cenlar, FSB is the current loan servicer on behalf of Plaintiff.

6. Defendant defaulted on her obligation to submit payments under the Subject Loan in 2010, and the Subject Loan is due and owing for the April 2010 payment.

7. As a result of Defendant's default on her payments under the Note, on or about August 10, 2010, a Notice of Default and Election to Sell Under Deed of Trust was recorded against the Property by the trustee, on behalf of U.S. Bank.

8. Defendant also defaulted on her lease payments under the proprietary lease agreement entered into by Defendant and her landlord, lessor Ocean Towers Housing Corporation ("OTHC").

9. OTHC gave notice of Defendant's default under the lease agreement to Defendant, the lender and to other known parties of interest on May 11, 2011.

Neither Defendant nor U.S. Bank, or any of its agents, cured the default under the lease.

10. As a result of the uncured lease default, on or about August 2, 2011, an Unlawful Detainer Judgment ("UD Judgment") was entered against Defendant and in favor of OTHC, terminating Plaintiff's security interest in the Subject Property.

11. OTHC recorded a Notice of Entry of Judgment Terminating Proprietary Lease against the Property on or about August 11, 2011.

12. Neither U.S. Bank, nor any of its agents, ever foreclosed on the underlying security interest prior to the UD Judgment being entered on August 2, 2011.

**CONCLUSIONS OF LAW**

The sole issue before the Court is the operation of the California one-action rule and its associated "security first" principle.

> There can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property or an estate for years therein, which action shall be in accordance with the provisions of this chapter.

Cal. Civ. Proc. Code § 726(a).

Under section 726, "a creditor secured by a trust deed on real property must rely on the security before enforcing the underlying debt." Bank of Am. v. Graves, 51 Cal. App. 4th 607, 611 (1996). "However, when the value of the security has been lost through no fault of the creditor, the creditor may bring a personal action on the debt." Id. "[W]hen the mortgagee, by his own act or neglect, deprives himself of the right to foreclose the mortgage, he at the same time deprives himself of the right to an action upon the note." Ghirardo v. Antonioli, 14 Cal. 4th 39, 48 (1996) (alteration in original).

3

California courts have ruled that a "sold out" junior lienholder can sue a debtor for the balance of a debt after the senior lienholder has foreclosed on the property. See Roseleaf Corp. v. Chierighino, 59 Cal.2d 35, 38-40 (1963); Graves, 51 Cal. App. 4th at 611-12. The one-action rule does not require such junior lienholders to pursue foreclosure or to cure the default to the senior lienholder in order to obtain a money judgment against the debtor. Id. "There is no reason to compel a junior lienor to go through foreclosure and sale when there is nothing left to sell." Roseleaf, 59 Cal.2d at 39.

Plaintiff analogizes its position to that of a sold out junior lienholder. In Plaintiff's view, OTHC, the landlord, was equivalent to a senior lienholder with respect to the lease in question. When OTHC obtained an unlawful detainer judgment, evicted Defendant, and extinguished the lease, it obtained an analogous result to a foreclosure. And, by its nature, the unlawful detainer judgment left no residual value from the lease for the junior lienholder. The Court agrees with this assessment. If a junior lienholder has no obligation to cure a default on a senior lien when it is in danger of being sold out, it is unlikely that California courts would find that the one-action rule requires that a lienholder on a lease cure a default on rent payments in the face of an unlawful detainer action against the debtor/lessee. And the stated rationale for exempting junior lienholders from the one-action rule applies here as well:

> The junior lienor, however, is in no better position to protect himself than is the debtor. Either would have to invest additional funds to redeem or buy in at the sale. Equitable considerations favor placing this burden on the debtor, not only because it is his default that provokes the senior sale, but also because he has the benefit of his bargain with the junior lienor who, unlike the selling senior, might otherwise end up with nothing.

Roseleaf, 59 Cal.2d at 41.

      Plaintiff's failure to cure the lease default resulted in an unlawful detainer judgment and the loss of its security.  But for the reasons given in <u>Roseleaf</u> and <u>Graves</u> in the sold out junior lienholder context, this does not mean that Plaintiff has no recourse against the Defendant for an unsecured debt.  Judgment will be entered in favor of Plaintiff.  Plaintiff is to submit a proposed judgment after conferring with Defendant.

/ / /

/ / /

Dated: _____        3/14/16

                                                    _____
                                                              Dale S. Fischer
                                                           United States District Judge